Tammy Gruder Hussin, Esq. (Bar No. 155290)
Hussin Law
1596 N. Coast Hwy 101
Encinitas, CA 92024
Telephone (877-677-5397)
Tammy@HussinLaw.com

Attorney for Plaintiff, Janice Getty

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| Janice Getty,<br><br>Plaintiff,<br><br>vs.<br><br>Versatile Marketing Solutions, Inc. a Massachusetts corporation; Alliance Security, Inc, a Delaware corporation, dba AH Security, Inc.; Jasjit Gotra, individually, and DOES 1-10, inclusive,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *ET. SEQ;*** |

For this Complaint, Plaintiff, Janice Getty, by undersigned counsel, states as follows:

COMPLAINT FOR DAMAGES

# JURISDICTION

1. This action arises out of Defendants' repeated violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et. seq.* (the "TCPA").

2. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), in that Defendants transact business here and a substantial portion of the acts giving rise to this action occurred here.

# PARTIES

4. Plaintiff, Janice Getty ("Plaintiff"), is an adult individual with a residence in Orange County, California, and is a "person" as defined by 47 U.S.C. § 153(10).

5. Defendant, Versatile Marketing Solutions, Inc. ("VMS"), is a Massachusetts corporation, and is a "person" as defined by 47 U.S.C. § 153(10). VMS is a seller and telemarketer that initiates outbound telephone calls to induce consumers to purchase goods or services from VMS. VMS transacts or has transacted business in this district.

6. Alliance Security, Inc. ("Alliance") is a Delaware Corporation, doing business in California as AH Security, Inc., and is a "person" as defined by 47 U.S.C. § 153(10). Alliance transacts or has transacted business in this district by, among other things, initiating telemarketing calls to consumers.

7. Defendant, Jasjit Gotra ("Gotra"), is the founder, chief executive officer, president, and owner of VMS and Alliance. In connection with the matters alleged herein, Gotra has transacted business in this District and is a "person" as defined by 47 U.S.C. § 153(10).

8. At all times material to this Complaint, acting alone or in concert with others, Gotra had the authority and responsibility to prevent or correct unlawful telemarketing practices of VMS and Alliance, and has formulated, directed,

controlled, and/or participated in the acts and practices of VMS and Alliance, including the acts and practices set forth in this Complaint.

9. As detailed herein, VMS and Alliance and Gotra (hereinafter collectively referred to as "Defendants") combined forces in such a way that each Defendant should be liable for the acts or omissions of the others.

10. Does 1-10 (the "Agents") are individual employees and/or agents employed by Defendants and whose identities are currently unknown to the Plaintiff. One or more of the Agents may be joined as parties once their identities are disclosed through discovery.

11. Defendants at all times acted by and through one or more of the Agents.

## BACKGROUND

12. Defendants solicit and sell home security systems and security monitoring services, and combined forces to engage in overly-aggressive telemarketing practices to induce the purchase of its products and services.

13. Defendants have a history of engaging in illegal telemarketing practices. VMS and Alliance have been called to defend a multitude of TCPA claims against them, including TCPA class actions and TCPA multidistrict litigation.

14. VMS and Gotra's unlawful telemarketing practices caught the attention of the Fair Trade Commission ("FTC"). In January of 2014, the FTC sued VMS and Gotra for unlawfully invading the privacy of hundreds of thousands of consumers nationwide while violating a veritable plethora of Federal telemarketing laws. *USA v Versatile Marketing Solutions, Inc. and Jasjit Gotra,* USDC, District of Massachusetts, Case No. 1:14-cv-10612-PBS (2014).

15. As a result of the FTC's complaint, VMS and Gotra were ordered to pay $3.4 million dollars in civil penalties for the illegal telemarketing practices. In addition, VMS and Gotra were enjoined by the court from engaging in certain unlawful telemarketing practices, including but not limited to the following:

  a. Initiating any call to a person when that person has previously stated that he or she does not wish to receive calls from Defendants;

  b. Initiating any call in which Defendants fail to disclose truthfully, promptly, and in a clear and conspicuous manner the Defendants' identity, that the purpose of the call is to sell goods or services, and the nature of the goods or services; and

  c. Initiating any call using an automated voice without first obtaining written consent from the person called.

(*USA v Versatile Marketing Solutions, Inc. and Jasjit Gotra*, *supra*, Stipulated Final Order for Permanent Injunction and Civil Penalty, Document 2-1, filed March 10, 2014) (hereinafter referred to as the "Permanent Injunction").

  16. As demonstrated herein, in their efforts to solicit goods and services to Plaintiff, VMS and Gotra violated, and continue to violate, each of the aforementioned prohibitions in the Permanent Injunction.

## THE FACTS AS TO PLAINTIFF

  17. Sometime in or around 2014, Defendants began calling Plaintiff in an attempt to solicit goods and services.

  18. The calls from Defendants were made using an automated voice. Some automated voices told Plaintiff she qualified for a free home security system, and others were to alert Plaintiff of special promotions.

  19. Plaintiff is not, and never has been, interested in purchasing a home security system, and never knowingly agreed in writing to be contacted by Defendants.

  20. Plaintiff's cellular number is registered with National Do-Not-Call Registry.

21. Plaintiff did not wish to be called by Defendants, or any telemarketers for that matter.

22. When the calls began, Plaintiff followed Defendants' automated prompt system in order to opt out of receiving future calls; however, Defendants thereafter continued to call Plaintiff.

23. Plaintiff followed the automated prompts a number of times in an effort to remove her number; however, Defendants continue to call Plaintiff.

24. Plaintiff also answered many calls, and followed the prompts to speak to a representative in an effort to get the calls to stop. Plaintiff directed representatives during many of these calls to stop all calls to her; however, Defendants continue to call Plaintiff.

25. Plaintiff also called many of Defendants' phone numbers back in an effort to get the calls to stop. During some of these calls, Plaintiff followed an automated prompt system to opt of receiving future calls; however, Defendants continued to call Plaintiff.

26. Defendants call Plaintiff at an annoying and intrusive rate, sometimes calling Plaintiff multiple times a day. By way of example, on December 19, 2014, Defendants called Plaintiff seven times.

27. Defendants call Plaintiff using a variety of different area codes and many different phone numbers.

28. Defendants masked their true identity when calling Plaintiff and used a variety of different company names, including but not limited to GE Home Security, Alliance Security, and Home Security Systems. Defendants often times refused to provide Plaintiff with the name of their company when she asked.

29. Upon information and belief, Defendants intentionally caused confusion by using different phone numbers and different company names in order to escape liability for violating the TCPA.

30. As Defendants made it virtually impossible for Plaintiff to determine the true identity of the caller, Plaintiff had to feign interest in Defendants' products and services in order to figure out who was calling. Plaintiff answered another call from Defendants on or around July 31, 2015, and asked the representative for a website address. The representative told Plaintiff that she would have to speak to a "specialist" in order to obtain the requested information. In response, Plaintiff asked to be transferred to a specialist. Plaintiff was then told the only way she could speak to a specialist was if she first answered some questions. Plaintiff agreed to answer the representative's questions in order to ascertain whether the caller was in fact Alliance. The representative asked for Plaintiff's zip code, phone number, and asked whether she owned her home. After answering the questions, Plaintiff was then told a "specialist" would call her back and would provide her with the name of the company and the website.

31. The "specialist" called Plaintiff a few minutes later. Plaintiff asked for the name of the company and a website, and the specialist said he was calling from Alliance Security and the website was www.Alliancesecurity.com. Upon confirming the company was Alliance, Plaintiff complained to the specialist about the barrage of unwanted calls, and directed him to ensure that calls to her stop.

32. The specialist told Plaintiff her number would be removed and the calls would stop and that she would not receive more calls. A half hour later, Defendants called Plaintiff again and thereafter Plaintiff still received annoying calls from Defendants.

33. The deceptive and annoying telemarketing efforts of Defendants left Plaintiff feeling frustrated, angry, distressed, confused, and annoyed. The constant calls interrupted Plaintiff's work day, disrupted her family dinner time, and interfered with Plaintiff's peace and solitude.

34. Plaintiff was ultimately forced to retain counsel in order to get the calls from Defendants to finally stop.

# COUNT I
## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT – 47 U.S.C. § 227, *ET. SEQ.*

35. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

36. At all times referenced herein and within the last four years, Defendants placed calls to Plaintiff on her cellular telephones using an automated telephone dialing system and by using an artificial or prerecorded voice.

37. Defendants' telephone dialing system have the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

38. The calls from Defendants to Plaintiff were not placed for "emergency purposes" as defined by 47 U.S.C. § 227(b)(1)(A)(i).

39. Defendants have no "established business relationship" with Plaintiff as the term is defined in 47 CFR § 64.1200(f)(5), and as such had no prior express consent to call Plaintiff.

40. Defendants did not obtain Plaintiff's written consent to be called as required by 47 CFR § 64.1200(a)(2).

41. With no written consent and no established business relationship, Defendants calls were made without Plaintiff's consent.

42. Plaintiff followed the prompts many times to remove her number and made many verbal do-not-call directives to Defendants' representatives. As such, Defendants' calls to Plaintiff are in violation of 47 U.S.C. § 227(b)(1)(A)(iii).

43. Defendants called Plaintiff more than once at a cellular number which is registered on the National Do-Not-Call Registry, in violation of 47 CFR 64.1200(c)(2).

44. While placing calls to Plaintiff, Defendants, and each of them, knew the prohibitions of the TCPA, knew their conduct was illegal, and had already paid hefty fines to the Federal government. Defendants, and each of them, knowingly ignored the FTC's Permanent Injunction and consciously elected to barrage Plaintiff with automated calls without her consent and over her many objections. As such, Defendants should be subject treble damages for knowingly and/or willfully violating the TCPA pursuant to 47 U.S.C. § 227(b)(3)(C).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against the Defendants:

A. As a result of each call made in negligent violation of the TCPA, Plaintiff is entitled to an award of $500.00 in statutory damages pursuant to 47 U.S.C. § 227(b)(3)(B).

B. As a result of each call made in knowing and/or willful violation of the TCPA, Plaintiff is entitled to an award of treble damages in an amount up to $1,500.00 pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C);

C. As a result of placing more than one call per year to Plaintiff to a telephone number that was listed on the National Do Not Call Registry, an additional award of up to $1,500 per call pursuant to 47 CFR 64.1200(c)(2) and 47 U.S. Code §227(c)(5);

D. An Order from the Court requiring Defendants to comply with the aforementioned Permanent Injunction.

E. Such other and further relief as may be just and proper.

DATED: November 28, 2017          TAMMY HUSSIN

By: /s/Tammy Hussin
Tammy Hussin, Esq.
Hussin Law
Attorney for Plaintiff, Janice Getty